IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REX – Real Estate Exchange, Inc.,

    Plaintiff,

 v.

KATE BROWN, in her individual and official capacity as the Governor of Oregon; STEVE STRODE, in his individual and official capacity as the Commissioner of the Oregon Real Estate Agency; OREGON REAL ESTATE AGENCY; OREGON REAL ESTATE BOARD; MARIE DUE, DEBRA GISRIEL, SUSAN GLEN, JOSE GONZALEZ, DAVID E. HAMILTON, KIM HEDDINGER, LAWNAE HUNTER, PATRICIA IHNAT, and ALEX D. MACLEAN III, in their official capacities as members of the Oregon Real Estate Board,

    Defendants.

OPINION & ORDER

No. 3:20-cv-02075-HZ

1 – OPINION & ORDER

Herbert G. Grey
4800 SW Griffith Drive, Suite 320
Beaverton, OR 97005-8716

Michael C. Toth
REX - Real Estate Exchange, Inc.
3300 N. Interstate Hwy. 35, Ste. 149
Austin, TX 78705

Austin R. Nimocks
Christopher L. Peele
Cory R. Liu
Ashcroft Sutton Reyes LLC
919 Congress Ave., Ste. 1325
Austin, TX 78701

    Attorneys for Plaintiff

David B. Markowitz
Harry B. Wilson
Stanton R. Gallegos
Markowitz Herbold PC
1455 SW Broadway, Suite 1900
Portland, OR 97201

    Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff REX – Real Estate Exchange, Inc. ("REX") brings this action for antitrust violation under Section 1 of the Sherman Act, violation of the Fourteenth Amendment Equal Protection and Due Process Clauses, and violation of rights secured by Article I, section 20 of the Oregon Constitution against Defendants Kate Brown in her individual and official capacity as Governor of Oregon, Steve Strode in his individual and official capacity as Oregon Real Estate Commissioner, the Oregon Real Estate Agency, the Oregon Real Estate Board ("Board"), and each individual member of the Board in their official capacities. Currently before the Court

is Defendants' Motion to Dismiss Plaintiff's Complaint. For reasons stated below, the Court grants Defendants' Motion.

## BACKGROUND

Plaintiff REX is a real estate technology company that connects real estate buyers and sellers online. Compl. ¶ 4, ECF 1. Unlike most traditional brick-and-mortar real estate companies, REX offers rebates to customers on commissions it receives. *Id.* at ¶ 5. Under its Buyer Rebate Program, when one of its customers purchases a home, REX refunds half of its buyer's agent commission to the customer at closing. *Id.* at 6. REX contends that its Buyer Rebate Program reduces the price of the average home in Oregon by $5,000 to $10,000 with no impact on the seller's revenue. *Id.*

Defendant Oregon Real Estate Agency ("Agency") is an official agency of the State of Oregon. Compl. ¶ 18. The Agency has the power to "[m]ake and enforce rules as necessary to administer and enforce the provisions of . . . any law with the administration and enforcement of which the agency is charged. Or. Rev. Stat. ("O.R.S") § 696.385(3). The agency operates under the supervision and control of the Oregon Real Estate Commissioner ("Commissioner"), who is appointed by the Governor subject to confirmation by the Oregon Senate. O.R.S. 696.375(2). By statute, the Commissioner must have been a real estate broker in Oregon "actively engaged in business as such" for five years prior to the date of appointment. *Id.* The Commissioner "holds office at the pleasure of the governor." *Id.*

Defendant Oregon Real Estate Board exists within the Agency and is made of up nine members appointed by the Governor to hold office for four years and serve at the pleasure of the Governor. O.R.S. 696.405(1). Seven members must have held real estate licenses and have been actively engaged in the real estate profession in Oregon for five years prior to their appointments.

3 – OPINION & ORDER

*Id.* The other two Board members cannot be real estate licensees or have had any prior connection to the Agency. *Id.* The Board is authorized to inquire into the needs of real estate licensees, advise the Governor as to how the Agency may best serve the state and the licensees, and make recommendations and suggestions of policy to the Agency regarding the regulation of licensees and the real estate business in Oregon. O.R.S. 696.425(1).

REX received a real estate brokerage license and began doing business in Oregon in January 2019. In March 2019, the Agency sent an "Education Letter of Advice" ("Letter") notifying REX that its Buyer Rebate Program violates an Oregon state law that prohibits sharing real estate commissions with any person who does not have a real estate license. *Id.* at ¶ 59; *see* O.R.S. 696.290 ("[A] real estate licensee may not offer, promise, allow, give, pay or rebate, directly or indirectly, any part or share of the licensee's compensation arising from or accruing from any real estate transaction . . . to any person who is not a real estate licensee[.]"). The Letter informed REX that offering rebates to its customers is grounds for discipline under Oregon law, but that the Agency would not take action against REX's license at that time. Compl. Ex. 1, ECF 1-1. Since receiving the letter, REX has not rebated any portion of its commissions to customers. Compl. ¶ 63. REX contends that it has forgone transactions in Oregon and its revenue growth has been slower compared to other markets because it cannot offer rebates to customers. *Id.*

REX asserts that the Agency's anti-rebate policies bar new entrants to the brokerage market and protect incumbent brokers who benefit from artificially high commissions. *Id.* at 62. REX alleges that the Agency's policies restrict competition and "injure buyers and sellers of property throughout Oregon" by depriving them of price discounts, including cash rebates. *Id.* at 67. According to REX, "Defendants' promulgation, adoption, maintenance, and enforcement of the anti-rebate policies arises from and result in agreements, combinations, and conspiracies that

restrain competition . . . in violation Section 1 of the Sherman Act, 15 U.S.C. § 1." *Id.* at 72. REX also claims that Oregon's anti-rebate policies violate its and its customers' due process rights and equal protection rights. *Id.* at ¶¶ 82-109. Finally, REX claims that by enforcing the anti-rebate policies, Defendants violate the rights of REX and its customers under the Privileges and Immunities Clause of the Oregon Constitution Article I, section 20. *Id.* at ¶¶ 112-124.

Plaintiff seeks damages and an injunction prohibiting Defendants from enforcing Oregon's anti-rebate policies. Defendants move to dismiss all claims.

## STANDARDS

### II.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

I.  **Claims Under the Sherman Act, 15 U.S.C. § 1**

Plaintiff claims that Oregon's Governor, Real Estate Commissioner, Real Estate Agency, Real Estate Board, and each of the Board's members acted pursuant to a "continuing agreement among Defendants and co-conspirators to require home sellers to pay the buyer broker an inflated amount," and Defendants' established, maintain, and implement Oregon's anti-rebate policies in furtherance of a contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act. Compl. ¶¶ 74-76. Defendants argue that (1) Plaintiff's Sherman Act claim is barred by state-action immunity; and (2) Plaintiff fails to allege facts that make the Sherman Act claim plausible on its face. The Court addresses Defendants' arguments in turn.

   A. **State-Action Immunity**

Section 1 of the Sherman Act makes unlawful "every contract, combination . . ., or conspiracy, in restraint of trade or commerce among the several States." *Parker v. Brown*, 317 U.S. 341, 350 (1943) (quoting 15 U.S.C. § 1). The Act serves to promote robust competition and suppress "business combinations" that restrain competition. *Id.* at 351. But the Sherman Act "gives no hint that it was intended to restrain state action." *Id.* States may have an interest in regulating occupations, conferring exclusive rights to dominate a particular market to certain entities, or otherwise limiting competition to achieve public objectives. *N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494, 503 (2015). Thus, a State acting in its sovereign capacity is

generally immune from federal antitrust laws. *Deak-Perera Haw., Inc. v. Dep't of Transp.* 745 F.2d 1281, 1282 (9th Cir. 1984); *see Dental Exam'rs*, 574 U.S. at 503 ("If every duly enacted state law or policy were required to conform to the mandates of the Sherman Act, thus promoting competition at the expense of other values a State may deem fundamental, federal antitrust law would impose an impermissible burden on the State's power to regulate.").

But "[s]tate-action immunity is the exception rather than the rule." *Chamber of Com. of the U.S.A. v. City of Seattle*, 890 F.3d 769, 781 (9th Cir. 2018). When a State delegates control over a market to a non-state actor, the actor generally cannot assert state-action immunity. *See id.* ("Closer analysis is required when the activity at issue is not directly that of the State itself, but rather is carried out by other pursuant to state authorization.") (internal quotations and citations omitted).

Courts use three approaches to analyzing state-action immunity. First, true state action, such as that of a state legislature or state supreme court, is *ipso facto* immune from antitrust liability. *Hoover v. Ronwin*, 466 U.S. 558, 567-68 (1984). Second, municipalities and executive state agencies are entitled to state-action immunity if they act pursuant to a "clearly articulated and affirmatively expressed state policy" to replace competition. *Id.* at 568-69; *see Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 45 (1985). Third, private parties and state agencies that are controlled by participants in the markets they regulate only receive immunity if their anticompetitive acts are (1) taken pursuant to a clearly articulated state policy and (2) supervised by the state. *Dental Exam'rs*, 574 U.S. at 506.

1. *Oregon Governor*

Defendants assert that Governor Brown is *ipso facto* immune from antitrust liability under *Parker*. Plaintiff, on the other hand, claims that the *ipso facto* immunity afforded to state

7 – OPINION & ORDER

legislatures and supreme courts does not extend to governors. *See Hoover*, 466 U.S. at 568 n.17 ("This case does not present the issue whether the Governor of a State stands in the same position as the state legislature and state supreme court for purposes of the state-action doctrine."). But while the issue was not before the Court in *Hoover*, the Ninth Circuit has held that state executive branches are entitled to state-action immunity from antitrust suits. *See Deak-Perera*, 745 F.2d at 1283, *cert. denied*, 470 U.S. 1053 (1985) ("We see no reason why a state executive branch, when operating within its constitutional and statutory authority, should be deemed any less sovereign than a state legislature, or less entitled to deference under principles of federalism."). As the head of the executive branch of Oregon, any actions taken by the Governor are acts of the sovereign. Thus, Governor Brown is entitled to state-action immunity.

    2. *Oregon Real Estate Agency and Real Estate Commissioner*

Non-state actors who engage in anti-competitive conduct pursuant to state authorization do not receive *ipso facto* immunity from liability under the Sherman Act. Nevertheless, such persons or entities may be immune if they satisfy a two-part test: (1) the anti-competitive conduct was pursuant to "a clearly articulated and affirmatively expressed state policy to replace competition with regulation"; and (2) the conduct is "actively supervised by the State itself." *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980); *see Dental Exam'rs*, 574 U.S. at 506.

The supervision requirement ensures that immunity is conferred only to non-state actors who "in the judgment of the State, actually further state regulatory policies." *Patrick v. Burget*, 486 U.S. 94, 101 (1988). In *Town of Hallie*, the Supreme Court held that municipalities acting pursuant to clearly articulated and affirmatively expressed state policies are protected by state-action immunity without needing to show they are actively supervised by the state. 471 U.S. at

8 – OPINION & ORDER

47. The Ninth Circuit has since held that state agencies may receive the same immunity as municipalities without active state supervision because, as public bodies, state agencies are unlikely to be involved in private arrangements to limit competition. *Hass v. Oregon State Bar*, 883 F.2d 1453, 1460 (9th Cir. 1989). "Once it is clear that state authorization exists, there is no need to require the State to supervise actively the . . . execution of what is a properly delegated function." *Hass* 883 F.2d at 1460 (citing *Town of Hallie*, 471 U.S. at 47). In *Hass*, the Ninth Circuit determined that the Oregon State Bar was a state agency because the Oregon legislature had "expressly designated the Bar as the instrumentality through which the legislature will implement its policies[.]" *Id.* at 1461. The Court held that the Bar need not satisfy the active supervision requirement to be entitled to state-action immunity. *Id.* So long as a state agency meets the requirements set forth in *Hass* and is acting pursuant to a clearly articulated state policy, it is immune from liability under the Sherman Act.

Plaintiff argues that the Agency and the Commissioner cannot receive state-action immunity without active state supervision because the Agency is "wholly controlled by a market participant." Compl. ¶ 60. When a state agency is composed of or controlled by actors who participate in the same market they regulate, any anti-competitive agency actions must be "actively supervised" by the State. *Midcal*, 445 U.S. at 105. The *Midcal* supervision rule stems from the concern that "where a private party is engaging in anticompetitive activity, there is a real danger he is acting to further his own interests, rather than the governmental interests of the State." *Dental Exam'rs*, 574 U.S. at 507 (internal quotations and citation omitted). *Midcal* involved private businesses that restrained competition pursuant to state policy. 445 U.S. at 99-101. But the supervision requirement extends to "[s]tate agencies controlled by active market

9 – OPINION & ORDER

participants, who possess singularly strong private interests" because they "pose the very risk of self-dealing Midcal's supervision requirement was created to address. *Id.* at 1114.

Plaintiff asserts that the Commissioner is an active market participant because he "must hold an active real estate broker license to qualify for the position." Compl. ¶ 60. In its response brief, Plaintiff acknowledges that Commissioner Strode deactivated his license.[1] Pl. Resp. 17, ECF 38. But Plaintiff argues that the Commissioner's "deep ties to the real-estate lobby" give him "the same economic incentives to restrain competition as current active market participants." *Id.* at 17-18. Plaintiff relies on *Dental Exam'rs*, in which a majority of the North Carolina Dental Board's members were engaged in the active practice of dentistry—the profession they regulated. 574 U.S. at 511. In that case, the Supreme Court held that because the board was almost entirely composed of active market participants, it could only be entitled to state-action immunity if it was actively supervised by the State. *Id.*

In contrast, Commissioner Strode does not have an active real estate license and thus cannot engage in an active real estate practice while he is the head of the Agency. Even if the Commissioner has an economic incentive to restrain competition because of a future intent to participate in the market, this case is distinguishable from *Dental Exam'rs*. In *Dental Exam'rs*, the board members were elected by other licensed dentists and were not removable by any public official. *Id.* at 499-500. Here, the Commissioner is appointed by the Governor with Senate confirmation and can be removed by the Governor at will. In that respect, the Agency is more like a prototypical state agency—a fact that is not diminished by the requirement that the

---

[1] O.R.S. 696.375(2) requires the Commissioner to have previously held a real estate license and to have been active in the real estate business prior to appointment. The statute does not require the Commissioner to have an active real estate license while holding office. Plaintiff acknowledges its error after Defendants provided evidence that Commissioner Strode deactivated his real estate license upon being appointed Commissioner.

10 – OPINION & ORDER

Commissioner have formerly been an active market participant. As such, the Agency and the Commissioner need not satisfy the "active supervision" requirement. So long as they acted pursuant to a clearly articulated state policy, they are be entitled to state-action immunity. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 876 (9th Cir. 1987) ("When the state executive or executive agencies act within their lawful authority, their acts are those of the sovereign.").

Plaintiff also claims that the Agency did not act pursuant to a clearly articulated state policy because O.R.S. 696.290(1)(a) does not clearly express a policy banning rebates to its customers. Plaintiff argues that because other states allow rebates in the face of similar statutory language, O.R.S. 696.290(1)(a) cannot be a "clearly" articulated ban on rebates. Pl. Resp. 9-15, ECF 38.[2]

Clear articulation does not require a legislature to expressly state an anticompetitive intent. *Chamber of Com. of the U.S.A.*, 890 F.3d at 782 (citing *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 (2013). "The clear-articulation test is met if the anticompetitive effect was the foreseeable result of what the State authorized." *Id.* (internal quotations and citations omitted); *see City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 372 (1991) ("We have rejected the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition.").

---

[2] The Court notes that the majority of state statutes cited by Plaintiff do not explicitly use the word "rebate" as O.R.S. 696.290(1)(a) does. Whether, within a particular context, the term "rebate" may be interpreted differently is not before the Court. The Court finds that the Agency's interpretation is consistent with the plain meaning of the statute.

11 – OPINION & ORDER

Here, the Oregon legislature, in creating the Agency, expressly empowered the Agency to enforce rules and regulations related to the business of real estate sales. The Agency's authority to regulate real estate sales derives from O.R.S. 696.385(3), which states that the "Real Estate Agency shall have the power to . . . [m]ake and enforce rules as necessary to administer and enforce the provisions of . . . any law with the administration or enforcement of which the agency is charged." In enacting an authorizing statute, the Oregon legislature clearly articulated a policy empowering the Agency to suppress competition in Oregon as necessary to enforce Oregon law. *See Hass*, 883 F.2d at 1458 (holding that statutory scheme that "clearly evinces a legislative policy to supplant free market competition with regulation in the field" satisfies the clear articulation test). Thus, the Agency, and the Commissioner as its head, are authorized to enforce the provisions of O.R.S. 696.290(1)(a), which by its terms, states that a real estate licensee "may not . . . *rebate* . . . any part or share of the licensee's compensation . . . to any person who is not a real estate licensee[.]" (emphasis added).[3] Suppressing activity by real estate licensees that does not comply with the plain language of O.R.S. 696.290(1)(a) is a "foreseeable result" of what the legislature authorized.

The Court finds that in sending the Letter to REX, the Agency acted in a manner that was within its authority as delegated by the Oregon legislature and that was pursuant to a clearly articulated state policy. *See id.* ("Our task, therefore, is to determine whether the restraints in question are a reasonable and foreseeable exercise of delegated powers within the scope of an

---

[3] Under O.R.S. 696.290(1)(a), "any person who is not a real estate licensee" includes individuals exempt from license requirements under O.R.S. § 696.030. Such persons include "[a] nonlicensed individual transferring or acquiring an interest in real estate owned or to be owned by the nonlicensed individual." O.R.S. § 696.030(17). Thus, Oregon law specifically prohibits a real estate licensee from providing "any part or share of the licensee's compensation" to a person who is the buyer or seller of the real property that is the subject of the transaction. O.R.S. 696.290(1)(a).

agency's authority.") (quoting *Hybud Equip. Corp. v. City of Akron*, 742 F.2d 949, 960 (6th Cir. 1984)). Under *Hallie*, the Commissioner and the Agency are entitled to state-action immunity from antitrust liability.

### 3. *The Oregon Real Estate Board and Board Members*

Plaintiff argues that because the majority of Board members hold active real estate licenses and are active market participants, they must meet both of *Midcal*'s requirements. Defendants, on the other hand, argue that the Board and its members are immune from suit because they lack any authority to adopt, establish, or enforce state policy. The Board exists within the Agency and serves to "make recommendations and suggestions of policy." O.R.S. 696.425(1). Defendants note that the Board did not sign the Letter to REX or engage in its drafting. Def. Reply 14, ECF 40. Plaintiff alleges that the Board's anti-competitive act was to give "advice, recommendations, and/or assistance to the Agency concerning Oregon's anti-rebate law and . . . on enforcement activities, including the threatening letter sent to REX." Compl. ¶61. Even if Plaintiff can make credible allegations that the Board engaged in contract, combination, or conspiracy to restrain competition, the Board is entitled to state-action immunity under *Midcal*.

First, like the Agency, any recommendations made by the Board to prohibit rebates to customers were made pursuant to a clearly articulated state policy. The Board's role is to make policy recommendations and suggestions to the Agency. And if the Board recommended that the Agency notify REX that providing rebates to customers violates state law, then the Board engaged in a reasonable interpretation of O.R.S. 696.290(1).

Second, the Board is actively supervised by the Agency as an arm of the State. The Board lacks the authority to take any enforcement action and can only act through suggestions and recommendations to the Agency and the Governor. Indeed, the Board was created as a subsidiary of the Agency itself. *See* O.R.S. 696.405(1) ("The Real Estate Board is established within the Real Estate Agency."). Thus, by definition actions of the Board are supervised by the State. Under *Midcal*, the Board is entitled to state-action immunity.

In summary, any alleged anti-competitive actions by the Governor, the Commissioner, the Agency, and the Board were taken to enforce an anti-rebate law enacted by the state legislature. All such actions are those of the State itself, and thus fall squarely within the protection from antitrust liability justified by the reasoning in *Parker*.[4]

**B.      Plausible Claim under the Sherman Act**

Even if Defendants were not entitled to state-action immunity, Plaintiff has failed to allege facts that make its antitrust claim plausible on its face. To state a claim for violation of Section 1 of the Sherman Act, a plaintiff must plead facts that show "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the person or entities intended to harm or restrain trade or commerce among the several states, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). A conspiracy as defined by Section 1 of the Sherman Act requires "an agreement that joins together independent centers of decisionmaking." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196 (2010) (internal quotations and citation omitted). The

---

[4] The Court declines to opine on the wisdom of Oregon's anti-rebate policy. "The Court did not suggest in *Parker*, nor has it suggested since, that a state action is exempt from antitrust liability only if the sovereign acted wisely[.] The only requirement is that the action be that of the State acting as a sovereign." *Hoover*, 466 U.S. at 574 (internal quotations and citation omitted).

14 – OPINION & ORDER

agreement need not be between two or more separate legal entities. But the Sherman Act requires an agreement to restrain trade made between "separate economic actors pursuing separate economic interests." *Id.* at 195.

Defendants are all members of the executive branch of the Oregon state government. The Governor appoints and may remove the Commissioner and each of the nine members of the Board. The Commissioner and all of the Board members serve at the pleasure of the Governor. The Board is authorized by state statute to advise both the Agency and the Governor on policy regarding the real estate industry in Oregon. Thus, with respect to the Sherman Act, Defendants are members of the same entity. And with the respect to the alleged anti-competitive action taken, they are not separate decisionmakers. Plaintiff alleges no facts supporting an inference that Governor Brown, the Agency, or the Board function as separate economic actors to restrain competition. As such, even if Defendants were not entitled to state-action immunity, Plaintiff's claim that Defendants engaged in a contract, combination, or conspiracy to restrain competition would fail.

**II.     Claims under 42 U.S.C. § 1983**

Plaintiff brings three claims against Defendants under 42 U.S.C. § 1983 for violation of constitutional rights. First, Plaintiff claims Defendants violated its due process rights under the Fourteenth Amendment because O.R.S. 696.290, the law on which Oregon's anti-rebate policies are based, lacks "any rational relationship to a legitimate public purpose." Compl. ¶ 88. Second, Plaintiff claims that Defendants' enforcement of the anti-rebate policies violates the Fourteenth Amendment Equal Protection Clause by treating individuals and businesses that offer rebates differently than those that do not. P. Resp. 23. Third, Plaintiff brings an equal protection claim on behalf of its customers who do not have real estate licenses because they are prohibited from

receiving rebates, whereas home buyers who happen to possess real estate licenses are not.[5] Compl. ¶ 104.

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a "clear showing of arbitrariness and irrationality." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994). Because there is no fundamental right to give or receive rebates in real estate transactions, government prohibition of rebates is presumptively valid under the Due Process Clause if it is rationally related to a legitimate government interest. And because Plaintiff does not allege discrimination based on a suspect classification, the anti-rebate policy will survive an equal protection challenge "if there is a rational relationship between the disparity of treatment and some legitimate government purpose." *United States v. Ayala-Bello*, 995 F.3d 710 (9th Cir. 2021) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Thus, the fate of all three constitutional claims hinge on whether there is a rational basis for Oregon's anti-rebate policy.

Under rational basis review, a law or policy must be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis" for treating the plaintiff differently. *Jones v. Solis*, 121 F. App'x 228, 230 (9th Cir. 1995) (*quoting FCC v. Beach Commc'ns, Inc.*,

---

[5] Defendants do not challenge whether Plaintiff has third-party standing to assert claims on behalf of its customers. The Court does not address this issue in detail but notes that federal courts commonly recognize an exception to the rule against third-party standing when commercial businesses assert the rights of their customers. *See Craig v. Boren*, 429 U.S. 190 (1976) ("[V]endors and those in like positions have been uniformly permitted to resist the efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.").

508 U.S. 307, 313 (1993)). Even if a state statute or policy produces unequal or unfair results, it does not necessarily fail rational basis review. *United States v. Padilla-Diaz*, 862 F.3d 856, 862 (9th Cir. 2017). A state law may be constitutional even if it is "unwise, improvident, or out of harmony with a particular school of thought," as long as it bears some a relationship to some legitimate end. *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1051 (9th Cir. 2000) (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1955)).

Plaintiff presents many compelling arguments that Oregon's anti-rebate law hurts consumers and artificially increases home prices. But Plaintiff alleges no facts to rebut the presumption that O.R.S. 696.290 has a rational relationship to a legitimate government purpose. Regulation of certain trades or professions is a legitimate objective of state governments. *See id.* at 1054 ("It is properly within the state's police power to regulate and license professions."). Oregon's statutory scheme authorizes Defendants to regulate the business of real estate sales and the professional activity of realtors. Defendants state a legitimate purpose in preventing individuals without real estate licenses from receiving compensation for work that can only be performed by licensed realtors under the state scheme.

Plaintiff makes the conclusory allegation that Oregon's anti-rebate "policies unconstitutionally infringe on the rights of consumers and their brokers to decide how to transact." Compl. ¶ 64. But regulating the interaction between sales professionals and consumers falls squarely within the governing power of the State and provides a rational basis for Defendants' enforcement action here. In addition, Defendants' application of O.R.S. 696.290 to Plaintiff may be constitutional even if it prohibits more activity than is necessary to achieve its goal. *See Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1175 (D. Or. 2018) ("[T]hat the statute may

17 – OPINION & ORDER

be overinclusive by its enforcement . . . does not, under rational basis review, render it unconstitutional."). Because Plaintiff does not allege facts showing that Oregon's statute prohibiting compensation to unlicensed individuals lacks a rational basis, it fails to state a claim for violation of the Fourteenth Amendment Due Process and Equal Protection Clauses.

### III. Claims under the Oregon Constitution, Article 1, Section 20

Plaintiff brings claims under the Privileges and Immunities Clause of Article 1, section 20 of the Oregon Constitution.[6] Plaintiff alleges that Oregon's anti-rebate policies "violate Plaintiff's privileges by prohibiting Plaintiff from participating in the real estate market merely because it provides rebates to non-real estate licensees[.]" Compl. ¶ 114. Plaintiff also brings a claim on behalf of its customers, alleging that Oregon's anti-rebate policies "limit the privilege of receiving a rebate to real estate licensees and excludes non-licensees from receiving rebates[.]" Compl. ¶ 120.

As a preliminary matter, the Court notes that there is no private right of action for damages under the Oregon Constitution. *See Hunter v. City of Eugene*, 309 Or. 298, 303, 787 P.2d 881, 883 (1990) ("Oregon's Bill of Rights provides no textual or historic basis for implying a right to damages for constitutional violations."). Thus, neither of Plaintiff's claims under the Oregon Constitution provide a mechanism to recover damages from Defendants in their individual capacities.

Next, Defendants argue that the Eleventh Amendment bars suits brought in federal court under state law against state officials. Federal courts have long recognized an exception to Eleventh Amendment sovereign immunity when state officials are sued in their official

---

[6] "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." OR. CONST., art I, § 20.

capacities for prospective relief on federal law claims. *Ex Parte Young*, 209 U.S. 123 (1908). But the *Ex Parte Young* exception does not apply when a suit against state officials is brought under state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Thus, the Eleventh Amendment bars plaintiffs from bringing state law claims for both prospective and retrospective relief against state officials in their official capacities. *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (citing *Pennhurst*, 465 U.S. at 106). Consequently, Plaintiff's claims under the Oregon Constitution against Governor Brown, Commissioner Strode, and members of the Board in their official capacities are barred by the Eleventh Amendment.

Plaintiff correctly asserts that *Pennhurst* does not preclude it from bringing state law claims against Defendants in their individual capacities. *See id.* at 472 ("[The Eleventh Amendment] will not, however, bar claims against state officials in their *personal* capacities.") (emphasis in original). Though Plaintiff may bring damages claims against individual defendants, Oregon law provides no mechanism to recover damages under the Oregon Constitution. *See Hunter*, 309 Or. at 303, 787 P.2d at 883. Thus, Plaintiff's state constitutional claims must be dismissed.

In its extensive Complaint, Plaintiff makes compelling arguments that excessive fixed broker commissions harm consumers and the housing market itself. Plaintiff notes that the U.S. Department of Justice has begun to take action against the anti-competitive activity of traditional real estate brokers and that many states allow commission rebates to home buyers. Plaintiff points out that Oregon is one of the few remaining states that prohibit such rebates. But neither the merits of traditional real estate brokers' compensation scheme nor the prudence of Oregon's anti-rebate policies are before Court. The Court's role here is to decide whether Plaintiff states a plausible claim that the anti-rebate policies violates Section 1 of the Sherman Act, the Fourteenth

Amendment Due Process and Equal Protection Clauses, or the Oregon Constitution. In that regard, Plaintiff does not meet its burden.

## CONCLUSION

Construing all alleged facts in Plaintiff's Complaint as true, the Court finds that Plaintiff fails to adequately state claims on which relief may be granted. The Court grants Defendants' Motion to Dismiss [22].

IT IS SO ORDERED.

DATED: December 9, 2021.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

20 – OPINION & ORDER